BARBER ASPHALT CO. v. FORTY-SECOND ST., M. & ST. N. AVE. RY. CO.

In re LADD.

(Circuit Court, S. D. New York. December 17, 1909.)

RECEIVERS (§ 171*)—CLAIMS BY RECEIVERS—SET-OFF.

    A claim of one street railroad company against another under a contract between them, existing when the latter company went into the hands of receivers, cannot be set off against a claim of the receivers for power supplied by them or the use of their tracks, or for the apportionment of cash fares received during the receivership, which does not come under the contract between the two companies.

    [Ed. Note.—For other cases, see Receivers, Cent. Dig. § 325; Dec. Dig. § 171.*]

In Equity. Suit by the Barber Asphalt Company against the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railway Company. On exceptions to report of special master, on rehearing as to the claim for "current operating debt incurred in the ordinary course of business," made by William W. Ladd, as receiver of the New York City Railway Company. Report confirmed.

See, also, 170 Fed. 1022.

Dexter, Osborn & Fleming, for receiver of New York City Railway.
Merrill & Rogers, for defendant Railway Co.
Evarts, Choate & Sherman, for receiver of Railway Co.
Bowers & Sands, for Central Trust Co.

---

LACOMBE, Circuit Judge. The argument has gone somewhat into the questions argued upon exceptions to the original report, but I see no reason to modify the conclusions expressed in the memorandum filed upon disposing of them. As was then pointed out, the situation is complicated, intricate, and difficult, and the fundamental documents not easy of construction. It is most important that an authoritative exposition of these documents should be secured, before the receivers of all these roads embark in an interminable controversy as to items of charge and credit, with all the loss of time and money therein involved. The master has reached a conclusion which, if it be sound, will finally dispose of this claim, and presumably of similar ones against other roads. He has presented the argument in support of his conclusions clearly and tersely, and I concur, in order that the questions of law presented, which would not apparently be modified by proofs of what was actually disbursed for physical operation and repairs, may be finally determined now, instead of waiting till the funds of the various roads, which should be used to pay debts, may be largely dissipated in a long accounting.

This concurrence, however, is not without considerable doubt, especially as to any items of charge arising subsequent to September 24, 1907. When the property of the New York City Railway Company went into the hands of receivers, and its operation thereof, and indeed its activities generally, ceased, the "open account" between it and the Forty-Second Street Company came to an end, except for possible items of interest subsequently charged on amounts then due. When the receivers began the operation of the property in their hands as court officers, and thus came into relations with the Forty-Second Street Company, a new open account began. When the receivers furnished power or supplies, or demanded apportionment of cash fares received on lower Broadway, they did so, not as mere successors to the claims of the company whose property they took, but as independent operators of its road. If in the first three months of their receivership they sold electric power to the Forty-Second Street Company to the amount of $20,000, and if during the same time the Forty-Second Street Company collected cash fares while using tracks in the receivers' possession, for the use of which they became obligated to pay $5,000, it is difficult to understand on what theory they can get rid of the obligations to account to receivers for those sums on the ground that they had a claim against the New York City Company when the latter ceased operations on September 24th. To allow such a set-off would be substantially to give the Forty-Second Street claim against the New York City Company a preference over the claims of other general creditors, to which it would seem not to be entitled.

The exceptions are all overruled, and the report confirmed. Lest there be any doubt as to what will come up on appeal, the decretal order may contain the provisions of the earlier one entered on the first report.